# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | | |
|---|---|---|
| JOHNNY L. TRIPLETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05-2432-STA-dkv |
| | ) | |
| SHELBY COUNTY GOVERNMENT, | ) | |
| et. al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The Plaintiff, Johnny Triplett, brought the instant action against Defendants based on allegations that Defendants violated Title VII of the Civil Rights Act, the First and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. § § 1981 and 1983. Before the Court is Defendants' Motion for Summary Judgment, (D. E. # 88 ), filed on February 15, 2008. Plaintiff responded in opposition on May 12, 2008, (D.E. # 97). For the reasons set forth below, Defendants' Motion is GRANTED.

## BACKGROUND

Plaintiff worked full-time for both Shelby County and the United States Department of Veterans Affairs ("VA"). Shelby County policy required all full-time employees to consider Shelby County as their primary employer. Shelby County had a secondary employment policy that restricted employees from working at any other job that would create a conflict of interest with county employment. Under this policy, the County required all employees to complete a Secondary Employment Verification form. Upon direction from the Director of the Division of

Corrections, Lieutenant Edgar Hampton investigated the Secondary Employment Verification forms to ensure that employees working second jobs were in compliance with County policy. Lt. Hampton discovered that Plaintiff and Sergeant Stephen Craig were in violation of the policy. Lt. Hampton then advised Plaintiff that no Division of Corrections employee could work more than twenty (20) hours on a second job. During the investigation, Sgt. Craig resigned his secondary position. Plaintiff, however, continued to work full time (forty hours per week) in his secondary employment.

After Plaintiff continued to work more than twenty hours per week in his secondary employment, Defendants prepared for a *Loudermill* due process hearing to determine whether Shelby County should terminate Plaintiff's employment based on his violation of County policy. At the hearing on October 13, 2004, the County charged Plaintiff with 1) intentional failure to carry out instructions; 2) willful disregard of lawful orders; 3) violation of the secondary or additional employment/moonlighting policy; 4) violation of the Memorandum of Understanding between AFSCME Local 1733 (the employee union) and the Correction Center; 5) violation of the attendance policy, 6) violation of the employees general post order; and 7) falsification of information required by the County. Following the hearing, Shelby County terminated Plaintiff's employment on or about October 28, 2004.

Plaintiff appealed his termination to the Civil Service Merit Board ("CSMB"). The CSMB heard Plaintiff's appeal on January 19th and January 26, 2005. At the hearing, Chief of Security, Anthony Alexander, testified that in August 2004, Director George Little implemented a policy limiting secondary employment and overtime to twenty hours per week. Additionally, Lt. Hampton also testified before the CSMB that he was the hearing officer for Plaintiff's

*Loudermill* hearing. He testified that he took Plaintiff's past disciplinary action into account in determining his recommendation that Plaintiff's employment be terminated.

The CSMB found that there was substantial evidence to find Plaintiff guilty of violating the County's policies. The CSMB decided, however, to modify the termination to a suspension without pay for the period of time that Plaintiff was off work and to place him on a six month probationary period. The CSMB also reiterated that Plaintiff was subject to the Correction Center's policy of working a maximum of twenty hours per week at secondary employment. Plaintiff was reinstated on February 3, 2005.

Plaintiff filed a complaint with the EEOC on or about November 30, 2004 alleging that he was discharged because of his race and in retaliation for having filed a prior lawsuit in federal court. The EEOC issued a right to sue letter on April 22, 2005. Plaintiff then filed the instant lawsuit on June 15, 2005.

## SUMMARY JUDGMENT STANDARD

Rule 56 (c) provides that a

> judgment . . . should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law.[1]

In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party.[2] When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must

---

[1] Fed. R. Civ. P. 56(c); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[2] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

present some "specific facts showing that there is a genuine issue for trial."[3] It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[4] These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[5] Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[6] In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [the] asserted causes of action."[7] Finally, the "judge may not make credibility determinations or weigh the evidence."[8]

## ANALYSIS

### A. Title VII

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."[9]

### 1. Discrimination

---

[3] *Celotex*, 477 U.S. at 324.

[4] *Matsushita*, 475 U.S. at 586.

[5] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[6] *Celotex*, 477 U.S. at 322.

[7] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[8] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

[9] 42 U.S.C. § 2000e-2(a)(1) (2008).

In order to establish a prima facie claim of racial discrimination under Title VII, a plaintiff must prove four elements: 1) that he is a member of a protected class; 2) that he was qualified for the job; 3) that he suffered an adverse employment decision; and 4) that he was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees."[10] If the plaintiff makes his prima facie case then the burden then shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for its actions.[11] If the employer meets this burden, the plaintiff must show by a preponderance of the evidence that the reasons offered by the employer were actually a pretext for discrimination.[12] "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."[13]

It is undisputed that Plaintiff is a member of a protected class, was qualified for the position, and was terminated. Plaintiff alleges that he was terminated because of his race, but Defendants assert that Plaintiff was terminated for violating County policies. Plaintiff argues that there was no County policy in effect at the time of his termination that limited the number of hours an employee could work at a secondary job to twenty hours. Plaintiff does not dispute, however, that he received a verbal directive from Lt. Hampton regarding the twenty hour limitation and that this policy originated with Director George Little. At the *Loudermill* hearing, Lt. Hampton found that Plaintiff had refused to abide by this directive.

Defendants argue that Plaintiff cannot establish a prima facie case of racial discrimination because Plaintiff has failed to present evidence that he was treated differently than a similarly

---

[10] *Di Carlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004) (citing *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995).

[11] *Tex. Dep't of Cmty Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

[12] *McDonnell Douglass*, 411 U.S. at 804.

[13] *Burdine*, 450 U.S. at 253 (citing *Bd. of Tr. of Keene State Coll. v. Sweeny*, 439 U.S. 242, 25 n. 2 (1978)).

5

situated non-protected employee. For two employees to be similarly-situated for Title VII purposes, the plaintiff must show that the relevant aspects of his employment situation are "nearly identical" to those of the comparison employee whom he alleges was treated more favorably.[14] "The similarity between the compared employees must exist in all relevant aspects of their respective employment circumstances."[15] Included among the relevant aspects of employment are that the comparison employee "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."[16]

To show that he was treated differently than a similarly situated employee, Plaintiff compares himself to Mr. Bailey Waites, a white County employee who owns his own business but was not fired for working secondary employment. Plaintiff has not shown, however, that the relevant aspects of his employment are nearly identical to those of Mr. Waites. Plaintiff asserts that the relevant aspects of his and Mr. Waites's employment are 1) Plaintiff is African American and Mr. Waites is white; 2) both Plaintiff and Waites had secondary jobs during the relevant time period; 3) both worked many hours on their second jobs; and 4) Plaintiff was terminated, allegedly for violating the secondary employment policy, while Mr. Waites was not. The Court finds that these are not the relevant aspects of Plaintiff's employment for purposes of showing that he was similarly situated to Mr. Waites. In fact, there are many differences between Plaintiff's and Mr. Waites's employment. For example, Plaintiff was employed as a corrections officer, while Mr. Waites was an area manager. Additionally, Plaintiff and Mr. Waites did not have the same supervisor. Furthermore, Plaintiff had disciplinary actions on his record, while

---

[14] *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994).

[15] *Id.* (quoting *Ruth v. Children's Med. Cent.*, 1991 U.S. App. LEXIS 19062, AT *22 (6th Cir. Aug. 8, 1991)).

[16] *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).

Mr. Waites did not. Finally, Plaintiff has presented no evidence that Mr. Waites worked more than twenty hours per week in violation of the secondary employment policy to show that Mr. Waites was treated differently than Plaintiff. Based on the evidence presented to the Court, the Court finds that the relevant aspects of Plaintiff's employment are not "nearly identical" to those of Mr. Waites. Plaintiff failed to prove that he and Mr. Waites were similarly situated. Therefore, Plaintiff has also failed make a prima facie case of racial discrimination and has shown no set of facts which create a genuine issue for trial of discrimination.[17] Defendant's Motion for Summary Judgment is GRANTED.

### 2. Retaliation

Plaintiff also alleges that Defendants discriminated against him in retaliation for his filing a prior lawsuit in 2002 against Shelby County after Shelby County suspended Plaintiff for allegedly sleeping on the job. In order to establish a prima facie case of unlawful retaliation under Title VII, a plaintiff must prove by a preponderance of the evidence 1) that he engaged in a protected activity; 2) that the defendant knew of the protected activity; 3) that the defendant then took an adverse employment action against the plaintiff; and 4) that there is a causal connection between the protected activity and the adverse employment action.[18] "After proving the existence of a prima facie case, the burden [of production] shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse action."[19] If the defendant shows a legitimate non-discriminatory reason, the plaintiff must then prove by a preponderance of the evidence that the proffered reason was a pretext.[20] The plaintiff can establish pretext by showing

---

[17] Because the Court determines that Plaintiff has not made out a prima facie case of discrimination or retaliation, it need not determine the preclusive effect of the CSMB decision regarding the issue of pretext.

[18] *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003).

[19] *Nguyen v. City of Cleveland*, 229 F.3d 559, 562 (6th Cir. 2000).

[20] *Abbott*, 348 F.3d at 542.

7

that the proffered reason "1) has no basis in fact; 2) did not actually motivate the adverse action; or 3) was insufficient to motivate the adverse action."[21]

In this case, Plaintiff has established the first three elements of a prima facie case of unlawful retaliation. The parties do not dispute that 1) Plaintiff engaged in an activity protected by Title VII when he filed the previous lawsuit in 2002; 2) that the County knew of his protected rights; and 3) that Plaintiff was terminated. Defendants allege, however, that Plaintiff has not made out a prima facie case of retaliation under Title VII because he has not shown temporal proximity or a causal connection between the protected activity and the alleged retaliatory act Specifically, Defendants aver that there can be no inference of a causal connection based on temporal proximity because more than two years had passed between Plaintiff's lawsuit and Plaintiff's termination.

In order to establish the requisite causal connection, the plaintiff "must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action."[22] No single factor is dispositive in showing the causal connection, but "evidence that defendant treated the plaintiff differently from similarly situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation."[23] Temporal proximity alone, without "other evidence of causation is not sufficient to raise an inference of a causal link . . . ."[24] In this case, Plaintiff was terminated approximately two years after filing a lawsuit against the County. Defendants allege that Plaintiff was terminated because he knowingly and intentionally violated the directive that no Division of Corrections employee could work more than twenty hours per

---

[21] *Id.*

[22] *Nguyen*, 229 F.3d at 563.

[23] *Id.*

[24] *Id.* at 566.

8

week at a second job. Therefore, there does not appear to be close temporal proximity. Additionally, as discussed above, Plaintiff has not shown that he was treated differently than similarly situated employees. Furthermore, Plaintiff has presented no direct or compelling circumstantial evidence to show a causal relationship between his discrimination lawsuit and his termination. There is substantial evidence to support Defendants' version of the events. Plaintiff admitted in his deposition testimony that he was told that he could work a maximum of twenty hours at his secondary employment. When Plaintiff refused to comply with this policy, the county terminated his employment. Therefore, the Court finds that Plaintiff has not established a prima facie case of unlawful retaliation. Thus, Defendants' Motion for Summary Judgment is GRANTED.

**B. § 1981 Claim**

Plaintiff has also asserted claims under 42 U.S.C. § 1981. Section 1981 provides in pertinent part that

> [a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
>
> (b) "Make and enforce contracts" defined. For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.
>
> (c) Protection against impairment. The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.[25]

---

[25] 42 U.S.C. § 1981 (2008).

"Although § 1981 confers certain rights, the statute itself does not provide a cause of action for race discrimination."[26] In *Jett v. Dallas Independent School District*, the United States Supreme Court held that when a state actor violates an individual's rights under § 1981, § 1983 provides the exclusive remedy.[27] That is, "the express 'action at law' provided by § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor."[28] Accordingly, under *Jett*, a suit against a municipality for a violation of rights conferred under § 1981 must be brought pursuant to § 1983 and considered pursuant to § 1983.[29] Because there can be no independent action under § 1983, Defendants Motion for Summary Judgment is GRANTED.

### C. § 1983 Claim

Section 1983 imposes liability on any "person who, under color of any statute, ordinance, regulation, custom or usage, of any State" subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution or laws."[30] In order to prevail on such a claim, a § 1983 plaintiff must establish "(1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law."[31] "Section 1983 is not the source of any substantive right, but merely provides a method

---

[26] *Malone v. Shelby County Gov't*, No. 04-2810, 2005 WL 2114053, at *2 (W.D. Tenn. Aug. 30, 2005).

[27] 491 U.S. 701, 731 (1989).

[28] *Jett*, 491 U.S. at 735.

[29] *Id*.

[30] 42 U.S.C. § 1983 (2008).

[31] *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003).

for vindicating federal rights elsewhere conferred."[32]  Furthermore, local governments such as Shelby County are considered "persons" for purposes of § 1983.[33]

The prima facie case and the allocations of the burden of proof are the same for claims of discrimination under § 1983 and Title VI.[34]  The Sixth Circuit has noted that

> [a] plaintiff who alleges disparate treatment by a state employer is bringing essentially the same claim under Title VII as under § 1983.  If there is liability under Title VII, there should be liability under § 1983.  Similarly, if there was no discriminatory intent, there cannot be liability under either Title VII, on a disparate treatment theory, or § 1983.[35]

In this case, as discussed above, the Plaintiff has failed to demonstrate the forth prong of the prima facie case, that is, that he was treated differently than a similarly situated employee.  Therefore, as with Plaintiff's Title VII claims, Plaintiff's § 1983 claims cannot survive summary judgment.  Defendants' Motion is GRANTED.

**D.  Punitive Damages**

Plaintiff has also sued for punitive damages.  A plaintiff cannot recover punitive damages against a governmental entity under Title VII or § 1983.[36]  "[T]he courts in this circuit have concluded that punitive damages may not be recovered from a governmental entity" under Title VII.[37]  Furthermore, a plaintiff may not recover punitive damages against a municipality under §

---

[32] *Humes v. Gilless*, 154 F. Supp. 2d 1353, 1357 (W.D. Tenn. 2001).

[33] *Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000).

[34] *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 720 (6th Cir. 2004).

[35] *Grano v. Dep't of Dev. of City of Columbus*, 637 F.2d 1073, 1082 (6th Cir. 1980).

[36] *See* 42 U.S.C. § 1981(b)(1) (2008); *Robinson v. Runyon*, 149 F.3d 507, 516 (6th Cir. 1998);

[37] *Labarre v. Memphis Light, Gas & Water Div.*, 2006 WL 485086, at *1 (W.D. Tenn. Feb. 28, 2006) (citing *Poe v. Memphis Light, Gas & Water Div.*, 199 WL 1204694, at *3 (6th Cir. Nov. 30, 1999)).

1983.[38]  Defendant Shelby County is a governmental entity and is, therefore, immune from punitive damages.  Thus Plaintiff's claims for punitive damages must also be dismissed, and Defendants' Motion is GRANTED.

## E.  Individual Defendants

Plaintiff has sued George Little, Andrew Taber, Anthony Alexander, Edgar Hampton, and Stephanie Sumlar in their individual and official capacities as employees of the Shelby County Division of Corrections who had supervisory authority over Plaintiff.  Defendants argue that these claims should be dismissed because Plaintiff cannot sue the individual Defendants in their official capacities and because they are not "employers" under the definition in Title VII.

"A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity."[39]  Therefore, because Shelby County Government is the proper party and is named in Plaintiff's lawsuit, the Court finds that the claims against the individual Defendants in their official capacities should be dismissed.  Additionally, under Title VII, "an individual employee/supervisor who does not otherwise qualify as an 'employer,' may not be held personally liable . . . ."[40]  "Title VII does not create individual liability for individuals in supervisory positions . . . ."[41]  Therefore, because the individual Defendants are not employers under Title VII, the Court finds that the claims against them in their individual capacities should also be dismissed.  Furthermore, under the doctrine of qualified immunity, government officials who perform discretionary functions are protected from civil liability as long as their conduct does not violate a clearly established statutory or constitutional right "of which a reasonable

---

[38]  *Alexander v. Beale St. Blues Co., Inc.*, 108 F. Supp. 2d 934, 950 (W.D. Tenn. 1999) (citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981)).

[39]  *Matthews v. Jones*, 35 F.3d 1046, 1049 (citing *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 68 (1989)).

[40]  *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997).

[41]  *Akers v. Alvey*, 338 F.3d 491, 499–500 (6th Cir. 2003).

person would have known."[42] Plaintiff has presented no evidence to show that the individual Defendants violated his statutory or constitutional rights. Therefore, Defendants' Motion is GRANTED and all claims against the individual Defendants, including any claims for punitive damages, are DISMISSED.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment.

**IT IS SO ORDERED**.

                                                **s/ S. Thomas Anderson**
                                                S. THOMAS ANDERSON
                                                UNITED STATES DISTRICT JUDGE

                                                Date: June 16th, 2008.

---

[42] *Beard v. Whitmore Lake Sch. Dist.*, 402 F.3d 598, 602–03 (6th Cir. 2005) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).